UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROCKY J. WRAY, | § | |
| Individually and on behalf of all | § | |
| similarly situated employees | § | |
| | § | 4:26-CV-1806 |
| Plaintiff, | § | |
| | § | JURY DEMAND |
| V. | § | |
| | § | |
| FIRETRON, INC. | § | |
| BILLY CORBIN, JR., | | |
| JOHN HAUSER, | | |
| JOE CAMPBELL, | | |
| | | |
| Defendants. | | |

## Plaintiff's Original Complaint

Rocky J. Wray, individually and as class representative on behalf of all similarly situated sales employees who were not paid earned commission wages after termination, alleges the following against Firetron, Inc., Billy Corbin, Jr., John Hauser and Joe Campbell:

### I. Summary

1.  Wray sues Defendants for claims under the Fair Labor Standards Act (FLSA)[1], the Texas Quantum Meruit[2], Family Medical Leave Act (FMLA)[3], Age Discrimination In Employment Act (ADEA)[4], and Texas Labor Code Chapter 21 (Texas Age Claim)[5].

---

[1] 29 U.S.C. §§ 201 et seq
[2] *See Texas Med. Res. v. Molina Healthcare,* 659 S.W.3d 424, 436 (Tex.2023) (common law elements)
[3] 29 U.S.C. § 2601 et seq.
[4] 29 U.S.C. § 621 et seq.
[5] Texas Labor Code § 21.001 et seq.

Original Petition—*Wray, et al. v. Firetron, et al.*—Pg. 1

2. Wray's ADEA and Texas Age Claim require an administrative process.[6] Wray has started that process. He will request the Court abate the proceedings until he exhausts the administrative process. Wray may ask for a right to sue after 60 days if not received sooner or resolved during the required administrative period.[7]

## II. Jurisdiction and Venue

3. The Court has jurisdiction because the matter includes federal questions.[8]

4. Venue is proper in the Houston Division of the Southern District of Texas because Defendants reside and conduct business in this district.[9]

## III. Parties

5. Plaintiff Rocky J. Wray is an individual residing in Texas; parties may serve him through his undersigned attorneys.

6. Defendant Firetron, Inc. is a Texas corporation that resides and conducts business in Harris County, Texas. Its corporate office address is 10101 Stafford Centre Dr Ste A, Stafford, Texas 77477, and it may be served through its registered agent Billy R. Corbin Jr.

7. Defendant Billy Corbin, Jr. is an individual believed to be a Texas resident working in Harris County, Texas. He can be served at his principal place of business 10101 Stafford Centre Dr Ste A, Stafford, Texas 77477 or wherever he may be found.

---

[6] 29 U.S.C. § 626(d)
[7] *Id.*
[8] 28 U.S.C. § 1331
[9] 28 U.S.C. § 1391

8.     Defendant John Hauser is an individual believed to be a Texas resident working in Harris County, Texas. He can be served at his principal place of business 10101 Stafford Centre Dr Ste A, Stafford, Texas 77477 or wherever he may be found.

9.     Defendant Joe Campbell is an individual believed to be a Texas resident working in Harris County, Texas. He can be served at his principal place of business 10101 Stafford Centre Dr Ste A, Stafford, Texas 77477 or wherever he may be found.

## IV. Facts

### A. Enterprise Coverage Facts

10.    Firetron's primary purpose is a non-carrier commercial garage.[10]

11.    Firetron have employees that engage in commerce for purposes of selling, installing and maintaining fire suppression systems.

12.    Upon information and belief of Firetron's known contracts, locations, and Wray's earned wages, Firetron have gross annual sales exceeding $500,000.00.

13.    Upon Wray's information and belief Firetron has more than twenty-five employees.

### B. Collective Actions Allegations

14.    There are an unknown number of similarly situated former employees to whom Defendants denied earned commission wages on the unlawful employment practice that the employment handbook policies are an agreement that allows Defendant to withhold earns after

---

[10] *Id.*

termination. Defendant's FLSA violations harmed these unknown former employees and who benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join.

15. Wray brings his FLSA claim individually and on behalf of all similarly situated individuals (the Collective Class). An individual is a potential Collective Class member if: a. the employee worked for Defendant three years before this suit; the employee worked for Defendant as an employee earning commission wages; and that Defendants did not pay the individual earned commission wages after termination.

16. Defendants know and can readily identify these possible Collective Class members.

17. The Court can review and answer these merit questions collectively because this suit covers former employees paid commission wages at termination only.

18. Thus, the discrete question to identify the actual Collective Class harmed by Defendants' FLSA violations and those members' claims, except for damages, do not require individual analysis.

19. Defendants are liable under the FLSA for failing to properly compensate Wray and the Collective Class.

20. Defendants' policy, practice, and patterns were to not pay Wray, and the Collective Class earned commission wages by terminating them.

21. Defendants' unlawful payment practice was intentional, willful, and repeatedly violated Wray's and the Collective Class's FLSA rights for a proper earned wage.

22. Defendants' corporate policy was to minimize labor costs by not paying earned commission wages.

### C. Employment And Claim Facts

23. Wray's employment started June 1, 2021.

24. Firetron terminated his employment on September 26, 2025.

25. Wray worked for more than a year.

26. Wray worked 1250 hours or more in the twelve months before termination.

27. It was his second time as an employee.

28. Wray was over 40 years of age or older during this employment.

29. Firetron hired Wray as a commission salesperson.

30. Firetron paid Wray a yearly salary of ~$65,000.00.

31. Firetron paid Wray a commission wage based on its formula.

32. Firetron paid Wray ~$155,000.00 annually in commissions.

33. Wray performed his work without complaint.

34. Firetron did not notify him that he was not up to performance standards.

35. Firetron did not notify him that he did not meet employment standards.

36. Wray was qualified for his position.

37. Wray during 2024 underwent cardiac surgery.

38. Firetron knew that Wray underwent medical treatment.

39. Wray's medical insurance provider through Firetron's employee benefits provided coverage for the treatment.

40. Firetron knew that Wray's medical insurance provider through its programs provided coverage.

41. Firetron's insurance increased in part for Wray's medical treatments charge to Firetron's plan.

42. Wray took leave for his health treatment.

43. Firetron knew that Wray took leave for his health treatment.

44. Wray required leave for doctors appointments and other treatment, maintenance and cure from his cardiac surgery.

45. Firetron knew that Wray required continued leave for doctor's appointment and other treatment, maintenance and cure from his cardiac surgery.

46. Wray's medical insurance provided through Firetron's employment benefits provided coverage for his continued treatments.

47. Firetron knew that Wray's medical insurance through its employment benefits provided coverage for his continued treatments.

48. Firetron's employment benefit costs increased because of Wray's medical insurance coverage for his continued treatments.

49. Wray's required and still requires doctor's appointments and other treatment, maintenance and cure from his cardiac surgery after his termination.

50. Firetron knew that Wray required and still required doctor's appointments and other treatment, maintenance and cure from his cardiac surgery after his termination.

51. Wray relied-upon medical insurance does not cover these post-termination doctor's appointments and other treatment, maintenance and cure from his cardiac surgery.

52. Firetron's employment benefit costs decreased because Wray was no longer on its employer sponsored benefits including medical insurance coverage.

53. Wray incurred out of pocket expenses for these post-termination doctor's appointments and other treatment, maintenance and cure from his cardiac surgery

54. Approximately two weeks before his termination, his managers made comments about his age after Wray expressed his desire to retire in about 12-18 months when he became eligible for social security payments.

55. These managers were not Wray's managers when he started in 2021.

56. At the point of termination Wray expected commission payments from Firetron's formula, which he relied on for his employment terms.

57. But for his termination Firetron states it would have paid him the expected commissions.

58. Firetron's handbook is not an agreement.

59. Firetron's handbook is not a contract.

60. Firetron has sole control over commission vesting between earning and payment.

61. Firetron benefited from Wray's services as a salesman.

62. Firetron benefits from not paying Wray's commissions owed, but for his termination.

63. Firetron knew that it would benefit from not paying Wray commissions owed by terminating him before payment.

64. Defendants owe Wray earned sales commission wages.

65. Defendant Campbell was Wray's direct supervisor and had authority to direct and control Wray's work and daily activities.

66. Defendant Campbell participated in the decision to terminate Wray's employment.

67. Defendant Campbell had knowledge that Wray had earned commission wages from a sale completed before termination.

68. Defendant Campbell failed to ensure that Wray received compensation for wages earned, thereby acting as an agent of the company in the deprivation of wages.

69. Defendant Hauser was the manager with authority over payroll, compensation, and termination decisions.

70. Defendant Hauser either made or participated in the decision to terminate Wray without paying earned commission wages.

71. Defendant Hauser was aware of the commission structure and the timing of Wray's sale.

72. Defendant Hauser implemented or enforced the handbook policy conditioning commission payment on employment at time of payment, knowing this would deprive Wray of earned wages.

73. Defendant Hauser had actual or constructive knowledge that the termination timing was designed to avoid commission payment.

74. Defendant Corbin is the owner and ultimate principal of the business.

75. Defendant Corbin is responsible for the wage and compensation policies of the company, including the handbook provision at issue.

76. Defendant Corbin either approved or ratified the termination of Wray and the decision not to pay earned sales commission wages.

77. Defendant Corbin had authority over and responsibility for ensuring compliance with wage and hour laws.

## V. Causes of Action

### A. Unpaid Wages

78. Firetron owes Wray earned wages for commission sales earned through the date of termination and the payment until then.

**i. Fair Labor Standards Act: Wray and Collective Class against All Defendants**

79. The Fair Labor Standards Act requires employers to pay earned wages promptly after termination. Wages include commissions. A Present-to-Win policy does not negate earned FLSA wages.

80. Firetron's employment handbook is not a contract that Wray or the Collective Class agreed to; indeed, it does not "give any contractual rights whatsoever." Therefore, the FLSA's rules for earned wages prevail—not Firetron's policy.

81. Firetron owes Wray and the Collective Class unpaid wages earned within two years and to be determined at trial. Firetron acted recklessly and without regard to Wray's rights, it is liable to him for liquidated damages equal to his unpaid FLSA wages.

82. Wray and the Collective Class have employed an attorney to obtain these unpaid wages.

83. Firetron is liable to Wray and the Collective Class for his necessary and reasonable attorney fees.

### ii. Permanent Injunction

84. Wray requests that the Court ENJOIN and RESTRAIN Defendants from:

    a. Withholding earned commission wages upon termination of employees;

    b. Enforcing any handbook provision conditioning payment of earned commissions on employment status at time of payment; and

    c. Terminating employees for the purpose of avoiding earned wage obligations;

85. And that Defendants be ORDERED to:

    a. Pay Wray all earned and unpaid commission wages in the amount determined at trial;

86. Implement a written commission payment policy compliant with the Fair Labor Standards Act; and

87. Provide quarterly certification to Wray's counsel of compliance for one (1) year following judgment.

### iii. Texas Quantum Meruit: Wray against Defendant Firetron

88.    Wray provided Firetron with his sales services that benefited Firetron. Wray performed the services with the expectation that Firetron would pay him his commission for his sales.

89.    Firetron accepted his work and sales. Firetron obtained a benefit and continues to benefit from Wray's work because those customers are paying for Firetron's services Wray labored to obtain.

90.    Firetron knew or should have known that Wray expected compensation when it accepted the sales he had made. Firetron's failure to pay Wray the expected compensation is the cause of Wray's actual damages to be determined at trial, and within the Court's jurisdictional limits.

## B. Family Medical Leave Act
## Wray Against Firetron

91.    The FMLA defines Wray as an eligible employee.

92.    Firetron is a covered employer under the FMLA.

93.    The individual Defendants are covered employers under the FMLA because they act, directly or indirectly, in Firetron's interest as to Wray as an employee.

94.    The individual Defendants had supervisory authority over the complaining employee and were responsible in whole or part for the alleged violation while acting in the employer's interest."

95. Wray required intermittent leave for treatment associated with this heart surgery.

96. Wray gave Defendants adequate and proper notice of his medical condition and intermittent need for treatment.

97. It is unlawful for Defendants to interfere with, restrain, or deny Wray FMLA rights or leave.

98. It is also unlawful for Defendants to discharge, retaliate or otherwise discriminate against Wray for opposing Defendants unlawful FMLA practices.

### i. FMLA Interference

99. Defendants interfered with Wray's exercise of his FMLA rights when it terminated him, preventing him from using his FMLA rights permanently.

100. Defendants' interference with Wray's right to FMLA benefits harmed Wray by depriving him of actual wages.

### ii. FMLA Retaliation

101. Defendants terminated Wray's employment in retaliation for taking the FMLA leave.

102. Wray's FMLA leave was a factor in Firetron's decision to terminate Wray's employment.

103. Defendants' retaliation against Wray for exercising his FMLA rights harmed Wray by depriving him of actual wages.

104. In all cases, Wray was willing, able, and qualified to perform his duties.

**iii. Damages**

105.    Defendants are liable to Wray for his actual back and future wage damages of no less than $220,000.00 from his termination through his expected retirement or as determined at trial.

106.    Wray seeks equitable relief for reinstatement.

107.    Defendants are liable to Wray for liquidated damages equal to his actual damage and interest because they did not act in good faith. The temporal proximity of the adverse employment action and Wray's FMLA and termination shows Defendants did not have reasonable grounds to believe their actions were not a FMLA violation.

108.    Wray had to engage an attorney to bring this claim, Firetron is liable to Wray for his reasonable and necessary attorneys' fees and costs for the prosecution of this claim.

109.    Firetron is also liable to Wray for pre- and post-judgment interest.

### C.  AGE DISCRIMINATION
### WRAY AGAINST FIRETRON

110.    Wray was over 40 years old and qualified for his position when Firetron terminated his employment.

111.    Defendants made discriminatory comments to Wray and his co-workers regarding his age and a desire to retire when he reached 65 years of age.

112.    Within weeks Defendants fired him only stating it was going in a different direction. Upon information and belief Firetron replaced Wray with an employee younger than Wray.

i. **Age in Employment Discrimination Act**

113. Defendants are Firetron's agents under the ADEA.

114. Firetron violated the ADEA when it terminated Wray because of his age.

115. Wray suffered damages because of Firetron's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action. His actual damages are no less than $217,000.00 in expected loss wages from termination to his expected retirement date.

116. Firetron willfully violated Wray's rights under the ADEA and, as a result, is liable for liquidated damages.

ii. **Texas Labor Code Chapter 21: Wray against Firetron**

117. Firetron violated the Texas Labor Code when it considered Wray's age as a motivating factor to terminate Wray.

118. Wray suffered damages because of Firetron's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action. His actual damages are no less than $217,000.00 in expected back and future wages from termination to his expected retirement date.

119. Firetron willfully violated Wray's rights under the Texas Labor Code and, as a result, is liable for liquidated damages.

120. Wray had to engage an attorney to bring this claim, Firetron is liable to Wray for his reasonable and necessary attorneys' fees and costs for the prosecution of this claim.

121. Firetron is liable to Wray for pre-judgment and post-judgment interest.

## VI. Prayer

122. Plaintiff Rocky J. Wray respectfully requests that this Court enter judgment in his favor and against Defendants, as follows:

### A. Unpaid Commission Wages For FLSA Individual Liability

123. Against All Defendants (Firetron, Inc., Billy Corbin, Jr., John Hauser, and Joe Campbell):

   a. An award of all unpaid commission wages earned by Wray up until the date of his termination, in an amount proven at trial, but not less than $155,000;

   b. In accordance with the Fair Labor Standards Act, 29 U.S.C. § 216(b), liquidated damages equal to the unpaid wages awarded under paragraph (1) above, based on Defendants' reckless disregard for Wray's statutory rights;

124. Pre-judgment and post-judgment interest on all wage awards at the rate prescribed by law;

### B. Unpaid Commission Wages For FLSA Collective Action

125. Against All Defendants (Firetron, Inc., Billy Corbin, Jr., John Hauser, and Joe Campbell):

   a. Conditional certification of this action as a collective action under 29 U.S.C. § 216(b) on behalf of all similarly situated employees who:

   b. Were employed by Defendants in the three years preceding this suit;

   c. Worked as commission sales employees;

   d. Those who were not paid earned commission wages upon or after termination;

    e. An order requiring Defendants to provide notice of this collective action to all identifiable similarly situated employees;

    f. An award of all unpaid commission wages owed to the collective class of similarly situated employees, in an amount to be determined at trial;

    g. Liquidated damages equal to the unpaid wages of the collective class, based on Defendants' willful violation of the Fair Labor Standards Act;

    h. Pre-judgment and post-judgment interest on all collective class awards;

### C. Quantum Meruit In The Alternative

126. Against Defendant Firetron, Inc.:

    a. In the alternative, if Wray's FLSA claim is not available or limited, an award of damages under Texas quantum meruit for the reasonable value of Wray's services rendered to Defendant Firetron, Inc., in an amount proven at trial;

### D. Family And Medical Leave Act Relief

127. Against All Defendants (Firetron, Inc., Billy Corbin, Jr., John Hauser, and Joe Campbell):

    a. Actual damages for lost wages and benefits resulting from Defendants' interference with Wray's exercise of FMLA rights, in an amount proven at trial, but not less than $220,000;

  b. Liquidated damages equal to the actual damages awarded or such lesser amount as the Court deems appropriate, based on Defendants' failure to demonstrate good faith and reasonable grounds for believing their conduct did not violate the FMLA;

   c. Equitable relief including reinstatement to Wray's prior position or an equivalent position, with full restoration of seniority rights and benefits;

   d. All wages and benefits lost because of the unlawful termination, including health insurance continuation and retirement benefits;

   e. Damages for FMLA retaliation in an amount proven at trial;

### E. Age Discrimination Relief

128. Against Defendant Firetron, Inc. (ADEA); Against Defendant Firetron, Inc. (Texas Labor Code Chapter 21):

   a. Actual damages for lost wages and benefits from the date of termination through Wray's expected retirement date, in an amount proven at trial, but not less than $220,000;

b. Liquidated damages equal to the actual damages awarded under paragraph (15) above, based on Defendants' willful violation of the Age Discrimination in Employment Act and the Texas Labor Code;

c. Equitable relief including reinstatement to Wray's prior position or an equivalent position, with full seniority restoration and back benefits;

### F. Injunctive Relief

129. Against All Defendants:

   a. A permanent injunction enjoining and restraining Defendants, and each of them, from:

      i. Withholding earned commission wages upon termination of employees;

    ii. Enforcing any handbook provision conditioning payment of earned commissions on employment status at the time of payment;

    iii. Terminating or failing to pay employees for the purpose of avoiding earned wage obligations;

    iv. Discriminating against employees based on age (40 years or older);

    v. Interfering with, restraining, or denying employees FMLA rights or leave;

    vi. Retaliating against employees for exercising FMLA-protected rights or reporting age discrimination;

    vii. An order requiring Defendants to implement a written commission payment policy compliant with the Fair Labor Standards Act and to provide quarterly certification to Wray's counsel of compliance for one (1) year following entry of judgment;

### G. Attorney's Fees And Costs

130. Against All Defendants:

a. All reasonable and necessary attorney's fees and costs incurred in the prosecution of this action, as provided by the Fair Labor Standards Act, 29 U.S.C. § 216(b), the Family and Medical Leave Act, 29 U.S.C. § 2617(a), the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), and the Texas Labor Code, § 21.051 et seq.;

### H. Pre- And Post-Judgment Interest

131. Pre-judgment and post-judgment interest at the applicable rate prescribed by law on all monetary awards from the date of Wray's termination until final satisfaction;

### I. Collective Action Administration

132. An order requiring Defendants to identify and produce records identifying all similarly situated employees;

133. An award of costs associated with notice and administration of the collective action;

### J. Additional Relief

134. Such other and further relief as Wray and the Collective Class is entitled to in law or equity or as the Court deems just, proper, and equitable in the circumstances.

Respectfully Submitted,

/s/ Carl Wilson

William "Carl" Wilson
SBOT 24090472
SDTX 2412597
carl@wilsonwehmeyer.com
713-670-6891 Office
8904 Fairbanks N. Houston
Suite #225
Houston, Texas 77064
713-670-6891 Office